**In the Matter of Name Change of Winston Myles SIMPKINS.**

No. C9–98–2266.

Court of Appeals of Minnesota.

July 20, 1999.

Winston Myles Simpkins, Waseca, pro se appellant.

Richard L. Stiff, Warden, Waseca Federal Corrections Institution, Waseca, respondent.

Considered and decided by AMUNDSON, Presiding Judge, SCHUMACHER, Judge, and HALBROOKS, Judge.

## OPINION

AMUNDSON, Judge

On appeal from dismissal of his name-change proceeding for failure to appear at the hearing, Winston Myles Simpkins, a federal prison inmate, claims that the district court's denial of his requests to (1) appear by telephone conference; or (2) issue a writ of habeas corpus ad testificandum directing the sheriff to transport him to the district courthouse for the hearing violated his First Amendment right to religious freedom. He also asserts that the district court's denial of his motion to depose prison staff violated his Sixth Amendment right to compulsory process. We reverse and remand.

## FACTS

In July 1998, Simpkins, an inmate in the Federal Corrections Institution in Waseca, Minnesota, filed a verified petition to change his name to "Nasir 'Abd al-Baqi," stating that he had converted to the religion of al-Islam. The court found that his petition for a name change was not frivolous and ordered that he be allowed to proceed in forma pauperis. A hearing was scheduled.

Simpkins requested permission from the prison staff for an escorted trip to the hearing, explaining that he had adopted a Muslim name in keeping with his religious preference and wanted to have his Muslim name recognized as his name of record. He stated that his request came within the category of "religious activities;" that he had the custody level of LOW–OUT; that the distance to the courthouse was short; and that he would pay for the cost of the trip himself. His request was denied. Associate Warden Wood suggested in writing, however, that Simpkins ask the court to conduct the hearing by telephone conference or hear the matter at the prison.

In response to Simpkins's administrative appeal concerning his claim that he was not receiving the assistance necessary to change his name, the regional director of the Federal Bureau of Prisons informed him that

[the] Bureau of Prisons Program Statement 5800.07, *Inmate Systems Management Manual*, states: "[t]he name entered on the [judgment and commitment] order is to be considered the committed name to be used by the inmate, as well as the Bureau of Prisons. SENTRY must reflect the committed name, which may only be changed by federal court order."

You must process a legal name change through the state superior court. Once this is accomplished, you may petition the U.S. District Court in which you were sentenced to modify your judgment and commitment order to reflect your legal name change. This action would enable Bureau of Prisons records to reflect the name change.

Subsequently, Simpkins moved the district court to hold the hearing at the prison. He explained that the prison officials had refused to transport him to the courthouse and noted that there was a judicial chamber in the prison's visiting room. In the alternative, he requested permission to effect the name change by affidavit.

Simpkins then filed a supplemental motion requesting that the court consider hearing the matter by telephone conference. He submitted with his motion a copy of his written request to the prison for the escorted trip and a copy of the associate warden's recommendations for alternative arrangements. A few weeks later, Simpkins petitioned for a writ of habeas corpus ad testificandum directing the Waseca County Sheriff's Office to transport him to the courthouse for the hearing.

The district court denied Simpkins's motions, stating that (1) there were no compelling circumstances to justify the cost of changing the location of the hearing; (2) hearing the matter by telephone conference or affidavit was contrary to the statutory provision requiring the petitioner's presence at the hearing; (3) the request for a writ of habeas corpus ad testificandum was contrary to 28 C.F.R. § 527.31 (1998); and (4) absent compelling circumstances, the cost and security burden on the county overrode Simpkins's desire to be transported to the courthouse to change his name, which he could accomplish on his release from prison.

Simpkins moved for reconsideration of the motion to conduct the hearing by telephone conference in the presence of prison staff who would identify him, or, in the alternative, for reconsideration of the petition for the writ, arguing that he was not scheduled for release for at least 33 months and that prison officials had assured him that they would honor a writ. The district court denied his motion for reconsideration.

Simpkins then filed a motion to take the depositions of prison staff to establish that

(1) prison officials would transport him to the courthouse pursuant to a writ or permit a telephone conference call to be scheduled; (2) Simpkins presented a minimal security burden and was eligible for work outside the secure perimeter of the prison; and (3) the cost to transport him to courthouse was nominal. The district court denied the motion as an improper filing on the ground that the court had previously denied his motion to reconsider. This pro se appeal followed.

## ISSUES

I. Did the district court err in denying appellant's motion to conduct his name-change hearing by telephone conference?

II. Did the district court err by refusing to issue a writ of habeas corpus ad testificandum to produce appellant's appearance at his name-change hearing?

## ANALYSIS

### I. Hearing by Telephone Conference

◼ Simpkins asserts that the district court erred in denying his motion to conduct the name-change hearing by telephone conference under Minn. R. Civ. P. 7.02(a). We disagree. Although rule 7.02(a) provides that motions may be heard by telephone conference, a petition for a name change is not a motion. A petition is

> [a]n application to a court ex parte, or where there are no parties in opposition, praying for the exercise of the judicial powers of the court in relation to some matter which is not the subject for a suit or action, or for authority to do some act which requires the sanction of the court[.]

*Black's Law Dictionary*, at 1146 (6th ed.1990). A motion is

> [a]n application to a court or judge for purpose of obtaining a rule or order directing some act to be done in favor of the applicant. It is usually made within the framework of an existing action or proceeding and is ordinarily made on

notice, but some motions may be made without notice.

*Id.* at 1013 (citation omitted); *see also* Minn. R. Civ. P. 7.02 (defining motion as "an application to the court for an order"). Even if the petition could be construed as a motion, a name change proceeding is excepted from the Minnesota Rules of Civil Procedure to the extent the statutory procedure is inconsistent with the rules. Minn. R. Civ. P. 81.01(a). A person who wants to change his or her name "shall appear personally before the court and prove identity by at least two witnesses." Minn.Stat. § 259.10, subd. 1 (1998). The statutory procedure is, therefore, inconsistent with rule 7.02(a), which provides for hearing by telephone conference. The advisability of modifying the statute to authorize telephone conferences or alternatives is more appropriately addressed by the legislature.

## II. Denial of Writ

■ A writ of habeas corpus ad testificandum is a common law writ for the production of witnesses who are confined in jail and, thus, beyond the reach of an ordinary subpoena. *Neufield v. United States*, 118 F.2d 375, 385 (D.C.Cir.1941). A writ of habeas corpus ad testificandum is discretionary with the district court when production of the witness is at the government's expense. *Id.* Although a reviewing court will not reverse a district court on a matter in its discretion except for a clear abuse of discretion, the court must exercise its discretionary power "with close regard to all the facts of the case and in furtherance of justice." *Mehralian v. State*, 346 N.W.2d 363, 365 (Minn.App. 1984), *review denied* (Minn. July 26, 1984). In determining whether an abuse of discretion is shown, a reviewing court construes the district court's findings in light of the record. *Id.*

Simpkins asserts that the district court erred in refusing to issue the writ, thereby violating his First Amendment right to religious freedom. He argues that: (1)

the district court improperly used 28 C.F.R. § 527.31 to deny the writ; (2) the court failed to comply with the provisions in 28 C.F.R. § 527.31(c); (3) his sincerely held belief that he should be recognized by his Muslim name represents an exercise of his First Amendment right of religious freedom and is, therefore, a compelling circumstance; (4) the court failed to investigate his allegations that he presented a minimal security and cost burden to the county; and (5) there is no evidence demonstrating that transporting him to the hearing would be a financial and security burden on the county. We will address these arguments seriatim.

The district court found that issuing the writ was contrary to 28 C.F.R. § 527.31 (1998). We disagree. The Bureau of Prisons will consider requests made on behalf of a state court to transfer an inmate to the physical custody of a state court pursuant to a writ of habeas corpus ad testificandum. 28 C.F.R. § 527.30 (1998). The procedures that apply to an inmate's transfer provide, in part, as follows:

(b) The Warden shall authorize transfer only when satisfied that the inmate's appearance is necessary, that state and local arrangements are satisfactory, that the safety or other interests of the inmate (such as imminent parole hearing) are not seriously jeopardized, and that federal interests, which include those of the public, will not be interfered with, or harmed. Authorization may not be given where substantial concern exists over any of these considerations.

(c) The request for transfer of custody to state agents shall be made by the prosecutor or other authority who acts on behalf of the court and shall be directed to the Warden * * *. The request shall be made by letter. * * * For civil cases, the request shall also indicate the reason that production on writ is necessary and some other alternative is not available.

\* \* \* \*

(g) Transfers in civil cases pursuant to a writ of habeas corpus ad testificandum must be cleared through both the Regional Counsel and the Warden. Transfer ordinarily shall be recommended only if the case is substantial, where testimony cannot be obtained through alternative means such as depositions or interrogatories, and where security arrangements permit. Postponement of the production until after the inmate's release from federal custody will always be considered, particularly if release is within twelve months.

28 C.F.R. § 527.31 (1998). Although the procedures allow the warden to refuse to authorize the transfer, the district court is not required to obtain clearance from the warden or the regional counsel for authority to *issue* the writ, and the court's reliance on these provisions as a basis for refusing to issue the writ is misplaced. But Simpkins's argument that the court was required to send a letter to the warden requesting his transfer to the courthouse is equally incorrect, because the court's issuance of the writ is discretionary. The issue, therefore, is whether the refusal to issue the writ was an abuse of discretion under the facts of this case.

■ The district court found there were no compelling circumstances to justify either changing the location of the hearing or issuing a writ. Again, we disagree. "[P]risoners retain the right to the free exercise of religion." *Salaam v. Lockhart,* 905 F.2d 1168, 1170 (8th Cir.1990) (citing *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987)). "[A]doption of Muslim names by inmates practicing that religion is generally recognized as an exercise of both first amendment speech and religious freedom." *Id.* at n. 4 (citations omitted). Simpkins's verified petition stated that he wanted to change his name because he had converted to the religion of al-Islam. His religiously motivated adoption of a new name is, therefore, an exercise of his First Amend-

ment right of freedom of religion. But the prison authorities will not recognize his adopted name unless it is legally changed by a state court.

The Minnesota Legislature has granted an inmate the right to change his or her name:

During an inmate's confinement in a correctional facility, \* \* \* an inmate may request a name change under section 259.10 only once and may proceed in forma pauperis only when the failure to allow the name change would infringe on a constitutional right of an inmate.

Minn.Stat. § 259.12 (1998). The Eighth Circuit has stated that adoption of a Muslim name by an inmate does involve the constitutional rights of the inmate. *Salaam,* 905 F.2d at 1170 n. 4. The legislature has authorized an inmate in Simpkins's circumstances to proceed in forma pauperis in requesting a name change. Minn.Stat. § 259.12.

■ Further, in permitting an inmate to request a name change, the legislature has expressly recognized that a name change may be requested "[d]uring an inmate's confinement." *Id.* The name-change statute requires a petitioner's personal appearance before the court to prove his or her identity. Minn.Stat. § 259.10. "The legislature does not intend a result that is absurd, impossible of execution, or unreasonable." Minn.Stat. § 645.17(1) (1998). Moreover, we construe conflicting statutory provisions to give effect, if possible, to both. Minn.Stat. § 645.26, subd. 1 (1998). By authorizing an inmate to seek a name change during confinement and requiring an inmate's personal appearance before the court, the legislature must have intended to permit the inmate's transportation to the hearing or to allow some other means of satisfying the in-person requirement.

■ The court found that transporting Simpkins to the courthouse would impose economic and security burdens on the county. But the record contains no evi-

dence to support these findings, and there is no basis for implying that the legislature intended to condition the right to proceed in forma pauperis on the absence of a financial burden on the county. *See* Minn. Stat. § 563.01, subd. 4 (1998) (stating that if litigant is authorized to proceed in forma pauperis, sheriff shall perform duties without charge). Therefore, we reverse and remand. On remand the district court shall consider alternatives in implementing the statutes, including issuing the writ; permitting Simpkins to appear by interactive video technology; and holding the hearing at the prison. In light of our disposition, we do not address Simpkins's challenge to the denial of his request to take the depositions of the prison staff.

## D E C I S I O N

The district court correctly denied appellant's motion to conduct his name-change hearing by telephone conference. But the district court erred when it failed to allow appellant some method by which he could satisfy the in-person requirement of the name-change statute.

**Reversed and remanded.**